UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
                          NORTHERN DIVISION

JONATHAN STEWART,

        Plaintiff,

                                        Case Number 07-13675-BC
v.                                    Honorable Thomas L. Ludington

GEOSTAR CORPORATION,

        Defendant.
_____ /

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On August 30, 2007, Plaintiff Jonathan Stewart ("Plaintiff") filed suit against Defendant GeoStar Corporation ("Defendant" or "GeoStar"), requesting a declaratory judgment determining that he owns 300,000 shares of stock of Defendant (count I), and an order directing Defendant to produce and allow Plaintiff to inspect its corporate records (count II). On December 19, 2007, this Court denied Defendant's first motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"). The Court found that prior state court proceedings did not bar Plaintiff's claims through the operation of res judicata or collateral estoppel because the state court dismissed the case for lack of subject matter jurisdiction. The Court also rejected Defendant's argument that the internal affairs doctrine limited this Court's subject matter jurisdiction.

On February 4, 2008, Defendant filed another motion to dismiss under Rule 12(b)(1), as well as for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to count II. On April 24, 2008, this Court denied Defendant's Rule 12(b)(1) motion to dismiss because it found that Plaintiff had alleged a sufficient amount in controversy to invoke the Court's diversity jurisdiction.

On the same date, the Court granted judgment on the pleadings as to count II. The Court determined that under Michigan choice of law principles, Delaware law applied, and Plaintiff's request to inspect corporate documents did not contain a statement under oath or power of attorney as required under Delaware law. The Court granted Plaintiff leave to amend the complaint, which he subsequently filed on May 9, 2008. In its order of April 24, 2008, the Court also granted Defendant's motion to stay discovery until June 5, 2008.

Presently before the Court are two motions: 1) Defendant's Rule 12(b)(6) motion to dismiss the first amended complaint, filed on May 27, 2008, and 2) Plaintiff's motion for summary judgment, filed on June 17, 2008. The Court held a hearing on both motions on August 18, 2008.

I

In his first amended complaint, Plaintiff states that he is a citizen of Texas and that Defendant is a Delaware corporation with its principal place of business in Mount Pleasant, Michigan. Defendant invests in gas and oil exploration and development. Plaintiff alleges that he owns 300,000 shares of Defendant. Defendant disputes that fact. Accordingly, Defendant has refused to provide Plaintiff access to corporate records otherwise accessible to its shareholders.

To support his claim of shareholder status, Plaintiff attached a stock certificate to his first amended complaint, which states that he owns 300,000 shares of Defendant. The certificate is dated October 10, 1997, and is signed by Defendant's secretary on that date, John Parrott ("Parrott"), and president, Thom Robinson ("Robinson"). At the court hearing on August 18, 2008, counsel for Defendant confirmed that, to the best of his information, the stock certificate was authentic.

Plaintiff also attached a January 30, 1998 letter from Defendant, signed by Parrott, which addresses Plaintiff as a shareholder. The letter provides that "[a]s a GeoStar shareholder you have

the right to inspect the corporation's stock ledger, list of stockholders and its other corporate books during normal business hours at our offices." The letter also addresses Plaintiff's alleged interest in Defendant: ". . . I have enclosed your GeoStar stock certificate (No. 232), together with a check (no. 1640) made payable to you in the amount of $50,000.00 as the cash portion of the GLG merger consideration pursuant to your agreement." The letter indicates that Defendant "understood that [Plaintiff] would deliver [his] old [Great Lakes Geophysical, Inc. ("GLG")] certificate in exchange for [his] new GeoStar certificate." The letter goes on to state that Plaintiff informed Robinson that the GLG certificate was lost, and that Defendant had noted that fact in its records. Consequently, Defendant stated in the letter that it canceled Plaintiff's 333 and 1/3 shares in GLG. Finally, the letter states that "[s]ince the merger of GLG has already been completed, this isn't a major issue." At the court hearing on August 18, 2008, counsel for Defendant confirmed that, to the best of his information, the letter was also authentic.

On April 29, 2008, Plaintiff sent a letter to Defendant, demanding, under oath, to inspect Defendant's corporate records, with an accompanying power of attorney authorizing his attorney to make the demand. The demand stated several purposes for his request, and attached a copy of Plaintiff's GeoStar stock certificate. Receipt of the letter was confirmed by U.S. Postal Service return receipt.

Subsequent filings of the parties provide additional relevant facts. Prior to the merger at issue in this case, Plaintiff owned 333 and 1/3 shares of GLG, constituting a one-third ownership interest in GLG. Robinson owned the other 666 and 2/3 shares, giving him a two-thirds ownership interest in GLG. At the time of the merger, GLG was a Michigan corporation.

On October 3, 1996, Defendant sent a letter of understanding to Plaintiff requesting him to

sign and return the letter if the proposed "reorganization" of GLG was "acceptable." The letter indicated that GLG would be merged into a wholly-owned subsidiary of GeoStar, GLG Acquisition Corporation ("GLG Acquisition"), a Michigan corporation. It also indicated that all of the common stock of GLG would be converted into a combination of stock in GeoStar and cash, and that Plaintiff's share would be 300,000 shares of GeoStar common stock, plus $50,000 cash. The letter is not signed by Plaintiff and Plaintiff does not indicate he returned the letter to Defendant. Despite receiving the stock certificate and a $50,000 check, Plaintiff, apparently, decided he would not cash the check.

On October 7, 1996, an agreement and plan of merger was signed by Parrott as president of GeoStar, Robinson and Parrott as president and vice president, respectively, of GLG Acquisition, and Robinson as president and shareholder of GLG. The agreement and plan of merger contains two copies of the signature page. One copy includes an unsigned signature line designated for Plaintiff to sign as a shareholder of GLG. The other copy does not include a signature line for Plaintiff. Consistent with the October 3, 1996, letter of understanding, the agreement and plan of merger provided:

> Each share of GLG Common stock issued and outstanding at and as of the Effective Time shall be converted into and represent the right to receive 900 shares of GeoStar Common Stock and $150.00 for the aggregate consideration for all GLG Common Stock of 900,000 shares of GeoStar Common Stock and $150,000 (the 'Merger Consideration').

According to the terms of the agreement, when the merger took effect, GLG ceased to exist and GLG Acquisition continued as the surviving corporation of the merger.

On September 29, 1997, GLG issued a "consent resolution of the shareholders" signed solely by Robinson. The resolution indicates Robinson was authorized to do so because his two-thirds ownership interest represented a majority of the shareholders. The resolution stated that the

agreement and plan of merger was approved and ratified, and that Robinson was authorized to consummate the merger agreement "without further action by or direction from the shareholders." GLG and GLG Acquisition filed a certificate of merger with the State of Michigan the following day.

On October 9, 1997, Defendant sent Plaintiff a notice of merger and dissenters' rights. On October 24, 1997, Defendant sent Plaintiff a letter stating it was "pleased with [Plaintiff's] decision not to elect dissenters' rights in connection with the merger . . . and [was] delighted to welcome [him] as a shareholder of GeoStar Corporation." The letter also requested Plaintiff to acknowledge his consent to the merger, that he is a party and signatory to the agreement and plan of merger, that he did not exercise his right to dissent, and that he waived certain other rights under §§ 761-774 of the Michigan Business Corporation Act. Plaintiff did not sign or return the letter.

Plaintiff asserts he received a notice of a shareholders meeting, dated October 29, 1998, and attached a copy to his summary judgment motion. Defendant contends that if it sent the notice, it must have done so as a result of a clerical or other error. Plaintiff also asserts that a representative of Defendant made him a verbal offer in November 2004 to purchase his GeoStar stock. Defendant does not admit the occurrence and Plaintiff has not identified the representative by name.

On November 15, 2004, Plaintiff authorized his attorney to inquire into his "33.3% interest or greater in [GLG], and as well Seismic Acquisition Group, [I]nc. and GeoStar." The authorization noted that Plaintiff "asked [his attorney] to begin the effort to see where [his] total investment stands today." On November 20, 2006, in response to a letter from Plaintiff dated October 18, 2006, Defendant sent Plaintiff a letter indicating that its shareholder registry does not reflect that Plaintiff is a shareholder of Defendant.

II

1. Defendant's Motion to Dismiss

*A. Standard of Review*

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). In *Twombley*, 127 S.Ct. at 1965, the Supreme Court continued, "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

*B. Discussion*

Defendant argues that count I of Plaintiff's first amended complaint should be dismissed because Plaintiff does not allege an adequate factual basis to support his status as a shareholder of Defendant. Defendant asserts that under Delaware law, shareholder rights are contract rights, thereby requiring Plaintiff to allege in his complaint all of the elements necessary to form a valid contract, including consideration. Even if one were to accept Defendant's arguments that Delaware law applies, and that under Delaware law, Plaintiff must plead a contractual relationship, Plaintiff has advanced factual pleadings sufficient to support his status as a shareholder.

Defendant primarily relies on *Musler v. Georgeff*, 233 F.Supp.2d 727 (D. Md. 2002), to support its argument that Plaintiff has not sufficiently plead facts to support his claim. However, it is significant that *Musler* was not decided on a motion to dismiss, but on a motion for summary judgment. The court held that whether consideration was paid for the issuance of stock was a question of fact; thus, appropriate for resolution on a motion for summary judgment. Whether a plaintiff must specifically plead each element of a contract to survive a motion to dismiss was not a question before the court.

Even if *Musler* requires Plaintiff to plead consideration to survive a motion to dismiss, Plaintiff has done so. Although Plaintiff does not expressly plead each element of a contract, his complaint, with exhibits, provides sufficient evidence to infer the existence of a contract. This is in contrast to *Musler*, in which the alleged stockholder could not survive a motion for summary judgment when he could offer no evidence of consideration. 233 F.Supp.2d at 732.

First, Plaintiff has a stock certificate for 300,000 shares of Defendant. Second, he has a letter from Defendant that identifies him as a shareholder: "As a . . . shareholder of [Defendant] you have

the right to inspect the corporation's stock ledger, list of stockholders and its other corporate books during normal business hours at our offices." The letter states that his stock certificate is enclosed and expresses Defendant's expectation that providing that certificate is in exchange for Plaintiff relinquishing his GLG shares. The letter acknowledges that Plaintiff's GLG certificate was reported lost and indicates Defendant consequently canceled the certificate. Finally, the letter states that "[s]ince the merger of GLG has already been completed, this isn't a major issue."

Plaintiff has plead the existence of a contract. The letter indicates that Plaintiff's relinquishment of GLG shares was consideration for receiving shares of Defendant. Thus, Plaintiff does more than provide conclusory labels, as the stock certificate and letter raise his claim for relief well beyond speculation.

Defendant's challenge to count II rested on its challenge to count I; thus, the motion to dismiss should be denied as to both counts.

2. Plaintiff's Motion for Summary Judgment

*A. Standard of Review*

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).

"Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

*B. Discussion*

Defendant advances two arguments that Plaintiff is not entitled to summary judgment. First, Defendant argues that while the merger between GLG and GeoStar was effective to transfer GLG assets to GeoStar, and to vest Robinson's ownership of GeoStar, it was not effective as to Plaintiff. Additionally, Defendant argues that it lacks factual information related to Plaintiff's shareholder status. The initial inquiry must be which state's law to apply. This Court has previously determined that Delaware law applies to count II of Plaintiff's complaint. Plaintiff asserts that Michigan law applies to count I because the merger of GLG and GLG Acquisition was a merger of two Michigan corporations. In contrast, Defendant appears to assume Delaware law applies because of the Court's prior ruling on count II.[1]

Under *Erie R. v. Tompkins*, 304 U.S. 64 (1938), a federal district court sitting in diversity applies the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Thus, the controlling conflict of laws principles here are those employed by Michigan.

Michigan's conflict of laws rule states that Michigan law applies "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). To determine whether to displace Michigan law, a court must consider whether a foreign state has an interest in the application of its law and, if so, whether Michigan's interests mandate that

---

[1] In its order dated April 24, 2008, the Court determined that Delaware's interest in having its law apply to the procedures governing shareholder access to corporate records overcame the presumption in favor of Michigan law. The Court noted that its conclusion was consistent with the internal affairs doctrine, which generally holds that the law of the state of incorporation governs issues pertinent to a corporation's internal affairs.

Michigan's law applies, despite the interests of the foreign state. *Id.* (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 301 (Mich. 1987)). "If no state has . . . an interest [in the application of its law], the presumption that Michigan law will apply cannot be overcome." *Id.* Factors to be considered in assessing whether Michigan's interests have priority over the interests of a foreign state include considerations of promoting certainty, predictability of results, ease of application, and preventing forum shopping. *See Olmstead*, 400 N.W.2d at 302.

Michigan law applies to count I. The merger between GLG and GLG Acquisition was a merger between two Michigan corporations. Delaware does not have an interest in the application of its law to this subject. While Defendant is a Delaware corporation, and Delaware has an interest in having its law applied to determine the rights associated with shares of Defendant that were conveyed as part of the merger, Delaware does not have an interest in the mechanics of the merger itself. The presumption that Michigan law applies is not overcome.

Moreover, application of the internal affairs doctrine leads to the same conclusion. As the Court indicated in its prior order, the law of the state of incorporation generally governs issues pertinent to a corporation's internal affairs. *See First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (citing Restatement 2d of Conflict of Laws § 302 (1971)); *Atherton v. Federal Deposit Insurance Corp.*, 519 U.S. 213, 223-224 (1997); *Wojtczak v. American United Life Ins. Co.*, 292 N.W. 364, 366 (Mich. 1940). The question before the Court in count I is the effect of the merger on Plaintiff's GLG shares in a merger with another Michigan corporation. Thus, Michigan is the state of incorporation, not Delaware, and Michigan law applies.

Finally, it is worth noting that the agreement and plan of merger itself indicates that the merger is "subject to . . . the Michigan Business Corporation Act," that the merger "will have the

-11-

effects specified in the MBCA," and that the agreement "shall be governed by and construed in accordance with the laws of the State of Michigan."

Under Michigan law, when a merger takes effect, "[t]he ownership interests of each entity party to the merger that are to be converted into ownership interests or obligations of the surviving entity or into cash or other property are converted." Mich. Comp. Laws § 450.1736(9)(g).[2] The only way in which a minority shareholder of a corporation can avoid the consequences of a valid merger is by exercising his rights as a dissenter, assuming he is entitled to such rights. Thus, if a minority shareholder does not exercise his dissenter rights, or is not entitled to them, his shares are transformed according to the merger agreement.[3] The U.S. Supreme Court has aptly described this fundamental principle of corporate law:

> At common law, unanimous shareholder consent was a prerequisite to fundamental changes in the corporation. This made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate. To meet the situation, legislatures authorized the making of changes by majority vote. This, however, opened the door to victimization of the minority. To solve the dilemma, statutes permitting a dissenting minority to recover the appraised value of its shares, were widely adopted.

*Voeller v. Neilston Warehouse Co.*, 311 U.S. 531, 536 (1941). *See also Weckler v. Valley City Mill Co.*, 93 F.Supp. 444, 455 (W.D. Mich. 1950) (citing *Voeller*, 311 U.S. at 536); *Salomon Bros., Inc. v. Interstate Bakeries Corp.*, 576 A.2d 650, 651-52 (Del. Ch. 1989) (same).

---

[2] Another provision contains substantially the same language: "When a merger takes effect . . . [t]he shares of each corporation party to the merger that are to be converted into shares, obligations, or other securities of the surviving corporation or any other corporation or into cash or other property are converted." Mich. Comp. Laws § 450.1724(2).

[3] Although the Court has determined that Michigan law applies, the same result is reached under Delaware law. *See, e.g.*, *Nat'l Supply Co. v. Leland Stanford Jr. Univ.*, 134 F.2d 689, 693 (9th Cir. 1943) (applying Delaware law and finding that the shares of dissatisfied shareholders were converted according to the merger agreement because they did not exercise their right to dissent and no other remedy was available).

Despite this principle, Defendant argues that the merger, which neither party disputes took place, was not effective as to Plaintiff. Defendant argues that Plaintiff was not a "party" to the merger agreement due to the fact that he did not sign it, and thereby he cannot "enforce" it. Neither Michigan nor Delaware law supports this proposition. As a minority shareholder, Plaintiff could not prevent a valid merger from becoming effective as to him by refusing to sign the merger agreement. *See e.g.*, *Nat'l Supply Co. v. Leland Stanford Jr. Univ.*, 134 F.2d 689, 693 (9th Cir. 1943) (applying Delaware law and finding that shares were converted according to a consolidation agreement even though the shareholders did not "sign and return the proxy" as requested). This is consistent with the GLG "consent resolutions of the shareholders," stating that Robinson was authorized "without further action by or direction from the shareholders of [GLG], to consummate the Merger Agreement" and the signature page of the merger agreement lacking a designated place for Plaintiff's signature.

If Plaintiff was dissatisfied with the merger, his exclusive remedy was to exercise his rights as a dissenter. In fact, had Plaintiff signed the merger agreement, he would likely have relinquished any right he had to dissent or challenge the validity of the merger. *See, e.g.*, *Camden v. Kaufman*, 613 N.W.2d 335, 338 (Mich. Ct. App. 2000) (stating that "[t]he general rule is that a shareholder who assents to a corporate transaction may not later challenge the validity of the transaction in court") (citing *Wallead v. Access Bidco, Inc.*, 600 N.W.2d664 (Mich. Ct. App. 1999) and *Burch v. Norton Hotel Co.*, 246 N.W. 131 (Mich. Ct. App. 1933)); *Salomon*, 576 A.2d at 654 (stating that a shareholder may lose his right to dissent or challenge a merger if it is shown that he "specifically intended to approve or agree to the terms of the merger"). Thus, the fact that Plaintiff did not sign the merger agreement is immaterial because it has no impact on the effectiveness of the merger.

Defendant also argues that the merger was not effective as to Plaintiff because he did not transfer his GLG shares to GeoStar as required by the merger agreement. However, this argument is factually inaccurate, and even if accurate, would not change the effect of the merger on Plaintiff's GLG shares. In its letter of January 30, 1998, Defendant acknowledged canceling Plaintiff's shares in GLG and that Plaintiff's reported loss of the stock certificate was not "a major issue." Defendant suggests that the letter was only written "with the hope" that Plaintiff would transfer his shares to Defendant and sign the merger agreement. Defendant does not, however, advance any evidence to support this unusual proposition. In contrast, the letter provides evidence that the shares were transferred, as Defendant acknowledged canceling them. Moreover, whether Plaintiff effected a physical transfer of his GLG shares is immaterial; the shares were automatically exchanged for GeoStar shares when the merger was consummated.

Similarly, Defendant argues that Plaintiff's decision to not cash the $50,000 check issued to him as part of the merger agreement indicates the merger was not effective as to Plaintiff. However, the fact that Plaintiff did not cash the check is immaterial as to whether the merger was effective as to Plaintiff. As previously discussed, under both Michigan and Delaware law, a merger is effective as to minority shareholders unless they exercise their dissenter rights. A shareholder cannot opt out of a merger by neglecting to cash a check.

In sum, neither party disputes that the merger between GLG and GLG Acquisition took place. Defendant admits the authenticity of Plaintiff's Geostar stock certificate, and the January 30, 1998, letter addressing Plaintiff as a shareholder. Defendant has not advanced any affirmative evidence to support its proposition that Plaintiff is not a shareholder of GeoStar. Because the

Defendant does not raise any genuine issues of material fact as to Plaintiff's status as a shareholder, Plaintiff must prevail on his motion for summary judgment as a matter of law.

As noted earlier, the Court has already determined that Delaware law applies to the rights afforded to Plaintiff as a shareholder of Defendant. The Court dismissed count II of Plaintiff's original complaint because his demand for shareholder access did not conform with Delaware law. Defendant does not dispute that Plaintiff's demand now conforms to Delaware law. Because the Court concluded under count I that there is no genuine issue of material fact as to Plaintiff's status as a shareholder, Plaintiff is entitled to all the rights afforded to shareholders of Defendant under Delaware law.

While the merger between GLG and GeoStar was effective to establish Plaintiff as a shareholder of Defendant on the effective date of the merger, the information before the Court is insufficient to determine Plaintiff's present status. The parties have not presented any information about changes GeoStar stock or GeoStar itself may have undergone since the merger effective date. Plaintiff is, however, entitled to discovery to determine his present ownership circumstance.

3. Defendant's Request to Stay Summary Judgment Motion

Under Rule 56(f) of the Federal Rules of Civil Procedure ("Rule 56(f)"), if a party opposing a motion for summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," a district court has discretion to deny the motion, order a continuance, or issue any other just order. A court should not grant summary judgment "absent *any* opportunity for discovery." *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994). However, a court is not required to allow time for further discovery "if the party does not explain how such discovery would rebut the movant's showing of the absence of a genuine issue

of material fact." *Singleton v. United States*, 277 F.3d 864 (6th Cir. 2002). Relevant factors include when the party "learned of the issue that is the subject of the desired discovery," the potential impact of the desired discovery on the summary judgment ruling, "how long the discovery period lasted," whether the party was "dilatory in its discovery efforts," and whether the party was "responsive to discovery requests." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196-1197 (6th Cir. 1995) (internal citations omitted).

Defendant attaches an affidavit of counsel, asserting that it needs additional discovery in order to adequately oppose Plaintiff's motion for summary judgment. Defendant asserts it has not been able to obtain relevant documents from its former counsel. Defendant also asserts that computer data corruption may have occurred over the years, that a computer forensics analysis "may be necessary" to recover relevant information, and that if the data can not be recovered, discovery is necessary from Plaintiff. Defendant also asserts that certain of Plaintiff's allegations, including Plaintiff's receipt of a 1998 notice of shareholders' meeting, and an offer from a GeoStar representative to purchase Plaintiff's shares, require that Defendant have an opportunity to depose Plaintiff.

Defendant has not made an adequate demonstration that further discovery would impact the summary judgment analysis. Most, if not all, of the information Defendant seeks is within its own control. Obtaining documents from its former counsel, and retrieving its own computer data only requires a diligent investigation by Defendant. It does not require discovery from Plaintiff. One can not be unsympathetic to the fact that the transaction underlying Plaintiff's claims occurred in 1996, however, Plaintiff's lawsuit has now been pending for at least one year. Throughout that entire time,

Defendant has been on notice that Plaintiff sought to establish his shareholder status based on the merger and stock certificate sent to him in 1998.

Although the Court stayed discovery in this case up until June 5, 2008, the stay was granted on Defendant's own motion and did not impact its ability to investigate its own documents and information. Moreover, Defendant's assertion that it needs discovery from Plaintiff regarding the 1998 notice of shareholders meeting and the alleged offer to purchase made by a GeoStar representative does not support granting Defendant's request under Rule 56(f) because such discovery would be immaterial. Evidence that Defendant received no such notice, no such offer, or neither would not defeat the summary judgment motion. Thus, the Court concludes that Defendant has not sufficiently shown that an additional period of discovery would generate genuine issues of material fact.

III

Accordingly, it is **ORDERED** that Defendant's motion to dismiss [Dkt. # 26] is **DENIED**, and Plaintiff's motion for summary judgment [Dkt. # 28] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that, to the extent that Plaintiff's motion for summary judgment is denied, Plaintiff is entitled to discovery. The Court will issue a scheduling order.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 5, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 5, 2008.

                                          s/Tracy A. Jacobs
                                          TRACY A. JACOBS